**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JOSEPH PACHECO, | Case No. 1:17-cv-445 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Joseph Pacheco filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June 2013 Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of September 14, 1993, due to physical and mental impairments. (Tr. 172, 196). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On January 5, 2016, ALJ Thuy-Anh Nguyen held an evidentiary hearing at which Plaintiff appeared with a non-attorney representative. The ALJ heard testimony from Plaintiff, Plaintiff's father, and impartial vocational expert William Cody. (Tr. 37-79).

On March 2, 2016, the ALJ denied Plaintiff's application in a written decision. (Tr. 20-31).

Plaintiff was born in 1993 and was 19 years old at the time his application was filed. Plaintiff was born and raised in Puerto Rico where he attended school until the sixth grade. His family relocated to Ohio and Plaintiff began attending seventh grade at Sycamore Junior High School. (Tr. 244). He graduated from high school and has no past relevant work. He alleges disability primarily due to mental impairments including Attention Deficit Disorder (ADD), learning disability, motor skills problems, balance problems, and difficulty being around people.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "schizoaffective/depressive/bipolar disorder; borderline intellectual functioning; autism spectrum disorder, and obsessive compulsive disorder." (Tr. 22). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work with the following nonexertional limitations:

> He is able to remember, understand, and carry out job instructions that are simple, repetitive, one- to three-steps, and routine in nature. He can occasionally relate to co-workers, supervisors, and the public. He is limited to work in low stress jobs defined as having occasional changes and does not have fast-paced demands or strict production quotas. He cannot perform reading or writing jobs. He would be off task ten percent of the workday.

(Tr. 24). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

2

concluded that there existed significant number of jobs in the national economy that Plaintiff could perform including such jobs as auto detailer, packer and cleaner. (Tr. 30). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating Plaintiff's non-exertional limitations; and 2) improperly weighing the opinion evidence. Upon close analysis, I conclude that the ALJ erred in evaluating the opinion evidence related to Plaintiff's mental impairments. For the reasons explained below, the undersigned herein recommends that this matter be remanded for further fact-finding.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  The ALJ's Evaluation of Plaintiff's Mental Impairments Is Not Supported by Substantial Evidence**

Here, Plaintiff's statement of errors raises one primary argument—that the ALJ erred in evaluating the opinion of consultative psychologist, Debjani Sinha, Ph.D. and by not adopting all of the limitations Dr. Sinha suggested in that opinion.  The undersigned agrees.

*1.  Relevant Medical Evidence*

At the request of the administration, Plaintiff presented for a psychological evaluation with Regina McKinney, Psy.D. in August 2013. A translator was present during the evaluation. (Tr. 653). Plaintiff reported that he has worked five part-time jobs with the longest employment at a grocery store where he bagged groceries for six months. (Tr. 654). He was terminated from that job due to an altercation with a supervisor. *Id*. Plaintiff did not have a driver's license and failed the test multiple times (Tr. 655). Dr. McKinney noted that Plaintiff did not appear to fully understand the purpose of the evaluation, but put forth good effort during testing. *Id*. On the TONI-4, Plaintiff obtained a raw score of 18 and a corresponding index score of 79 indicating he

5

was functioning in the poor range, with an age equivalence of 7 years, 3 months. (Tr. 655). Dr. McKinney diagnosed depressive disorder and borderline intellectual functioning with a GAF of 59. (Tr. 656). She concluded that Plaintiff may have difficulties reframing adversities, particularly in a competitive work environment and may require excessive support to adjust to new tasks or changes. (Tr. 657).

In October 2013, Plaintiff was evaluated through his parent's employee assistance program at TriHealth due to anger outbursts. (Tr. 677). On intake, Plaintiff was depressed, sad, had slow speech and impaired cognitive function and memory. (Tr. 676). Plaintiff reported being fired from McDonald's and Kroger and inability to get his driver's license after taking the test several times. (Tr. 678). His father reported hearing Plaintiff carrying on a conversation even though no one else was present. Id. Plaintiff was diagnosed with mild mental retardation, dysthymia and rule out schizophrenia with a GAF score of 40. (Tr.678). It was determined that Plaintiff's need exceeded what could be provided through the employee assistance program. (Tr. 673). Therefore Plaintiff was instructed to see a psychiatrist and seek assistance through Bureau of Vocational Rehabilitation and Hamilton County Developmental Disability Services. (Tr. 680).

On December 10, 2103, Plaintiff presented to Kuldip Singh, MD for psychiatric evaluation. Plaintiff reported hearing voices; frequent anger outbursts and being withdrawn. (Tr. 784). Dr. Singh diagnosed rule out schizophrenia, schizoaffective disorder, obsessive compulsive disorder and Tourette's with a GAF of 40-45. (Tr. 782). He prescribed Risperdal. Id. At a follow up visit a week later, Plaintiff continued to have anger outbursts, paranoia and felt sad and alone. (Tr. 781). Dr. Singh increased his

Risperdal and added Depakote. Id. A month later, Dr. Singh again increased Risperdal and added Celexa. (Tr. 780). In March 2014, Plaintiff continued to isolate himself spending most of his time in his bedroom and having auditory hallucinations. (Tr. 779). His Celexa and Risperdal were increased again. (Tr. 778-779).

In May 2014, Dr. Singh completed a mental status questionnaire for the administration. Dr. Singh noted that Plaintiff had aggression, hallucinations, difficulty with concentration and focus and went periods of time without eating. (Tr. 710). As for cognitive abilities, Dr. Singh stated that Plaintiff had low concentration and frustration tolerance and poor memory. Id. Plaintiff had poor stress tolerance and was noted to be quite dysfunctional. (Tr. 709-710). His diagnosis included autism spectrum disorder, schizoaffective disorder, rule out obsessive compulsive disorder and Tourette's. (Tr. 709).

In June 2014, Plaintiff continued to have periods of aggression and anger outbursts, as well as auditory hallucinations. (Tr. 776). Dr. Singh instructed Plaintiff to continue his Celexa and Depakote, and again increased Risperdal. *Id.* In January 2015, Plaintiff's father reported he was sleeping too much on the higher dose of Risperdal, so it was decreased. (Tr. 769). Plaintiff also reported losing his concentration while at work at Kroger. *Id.* By May 2015, Plaintiff was fired from his job after losing his temper and two months later punched a hole in the wall during an anger outburst. (Tr. 767-768). Along with seeing a psychiatrist, Plaintiff began counseling with psychologist, Richard Rechman, Ph.D. in January 2014. On intake, Plaintiff reported trouble trusting others and wanting to be by himself. (Tr. 735). He reported anger and memory problems, feeling depressed and hearing voices. (Tr. 736-737). Plaintiff did not have friends in

7

school and had problems with fighting. (Tr. 736). On questioning, his father reported Plaintiff had conversations with himself, made odd movements, punched himself in the face and had periods when he did not want to eat. (Tr. 738- 739). Mental status exam revealed an anxious and depressed mood; impaired judgment, memory, and concentration; and disordered associations and slow speed of thought. (Tr. 740). Dr. Reckman completed an emotional capacities evaluation form in February 2014. He opined that Plaintiff had "some" difficulty with understanding and memory; sustained concentration and persistence; social interactions and adaptation. (Tr. 733). He wrote that Plaintiff's occupational problems were more related to learning issues than to mood. *Id.* Plaintiff saw Dr. Reckman monthly for counseling sessions, where he reported continued issues with feeling mad and angry and described his anger outbursts. (Tr. 712-713, 719, 728, 730-731).

Dr. Reckman referred Plaintiff to Debjani Sinha, Ph.D. for a neuropsychological evaluation. This evaluation was conducted over four sessions with Dr. Sinha in February and March of 2014. (Tr. 696). Plaintiff reported that he spent 5-6 hours a day confined to his <u>bathroom</u> watching videos and political talk shows on his phone because he felt more comfortable in the confined space. *Id.* (emphasis added). He appeared to have low frustration tolerance due to getting angry easily and losing control. (Tr. 697). His father reportedly posted step-by-step instructions for Plaintiff to follow when doing laundry, but he was unable to do the dishes or cook meals for himself. (Tr. 697-698). Plaintiff reported trouble retaining information and poor concentration. (Tr. 698).

Dr. Sinha observed Plaintiff to be drowsy; needing verbal redirection and frequent breaks as he reached ceiling levels rapidly. (Tr. 699). On testing, Plaintiff

8

obtained a full scale IQ of 61 and his cognitive efficiency was rated at a grade level of 1.4. (Tr. 690). Dr. Sinha noted that Plaintiff had a tendency to overestimate his own capacities and others can easily believe he is capable of more and expect more of him, which leads to Plaintiff's agitation and being upset. (Tr. 703). Plaintiff was diagnosed with autism spectrum disorder, intellectual disability, depressive disorder and anxiety disorder. Id. Dr. Sinha concluded that Plaintiff would likely need a job coach in any environment where he is being trained for work readiness and a job coach would be needed even after the transition is made from training to employment. (Tr. 704). Dr. Sinha further noted that Plaintiff required many accommodations be made available to him to manage his emotional reactions, poor academic skills and variable levels of alertness. Id.

Plaintiff was evaluated in April 2015 by Catherine Staskavich, Ph.D. on behalf of Hamilton County Job and Family Services. Dr. Staskavich opined that Plaintiff was "markedly limited" in the following areas:

    a) ability to maintain attention and concentration for extended periods;
    b) ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
    c) ability to sustain an ordinary routine without special supervision;
    d) ability to work in coordination with or proximity to others without being distracted by them;
    e) ability to make simple work-related decisions;
    f) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
    g) ability to accept instruction and respond appropriately to criticism from supervisors;
    h) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
    i) ability to respond appropriately to changes in work setting;
    j) travel to unfamiliar places or use public transportation; and
    k) ability to set realistic goals or make plans independently of others.

(Tr. 787).

*2. ALJ's Decision*

In formulating Plaintiff's mental RFC the ALJ assigned little weight to the findings so Dr. McKinney because it was vague and did not include any functional limitations. (Tr. 27). The ALJ also assigned little weight to the mental functional capacity assessment completed by Dr. Staskavich. The ALJ noted that although Dr. Staskavich found Plaintiff disabled at all levels, she gave no explanation or findings in support of her opinion. *Id.* The ALJ also gave little weight to the findings of Dr. Singh that Plaintiff would be unable to get a job, because such a finding was inconsistent with the overall medical record. (Tr. 29). The ALJ gave some weight to Dr. Reckman's opinion that Plaintiff has "some" difficulty with understanding and memory; sustained concentration and persistence; social interactions and adaptation. The ALJ gave little weight to Dr. Reckman's assessment of Plaintiff's GAF score of 42, which indicates serious symptoms, because it was inconsistent with Dr. Reckman's treatment notes. (Tr. 28). The ALJ assigned "great weight" to the findings of state agency psychologist Drs. Demuth and Hoyle because he found their opinions to be consistent record evidence.

*3. Applicable Law and Regulations*

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the

opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings [.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole [.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight afforded to medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.,* No. 1:07cv331, 2009 WL 648597, *13 (S.D.Ohio Mar.11, 2009).

Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue,* No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

11

*3. Analysis*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because his evaluation of the opinion evidence was not done in compliance with agency regulations and controlling law. The undersigned agrees.

As noted above, Plaintiff was referred to Debjani Sinha, Ph.D. for cognitive testing at the request of his therapist, Dr. Rick Reckman (Tr. 8F). While IQ testing scores were considered an underestimate of abilities, testing on the BRIEF-A inventory was considered valid. These results showed Plaintiff had difficulty with inhibitory control and the ability to stop his own behavior. (Tr. 702). Dr. Sinha noted that "concerns are highlighted for Plaintiff's ability to manage current and future oriented task demands. *Id*. Dr. Sinha opined that Plaintiff would likely need a job coach in any environment and one will be needed even after the transition is made from training to employment. (Tr. 704). She further opined that for the Plaintiff to work in any environment "required that many accommodations be made available to him." I*d*. Dr. Sinha concluded that "it is questionable that he can work full-time" (Tr. 706). The ALJ, however, failed to discuss the limitations provided by Dr. Sinha in her decision or give any weight to the opinion of Dr. Sinha. This was error.

The Commissioner, however, argues that Dr. Sinha was a consultative psychological examiner, not a treating physician. As such, the Commissioner contends that although the ALJ did not expressly state the amount of weight assigned to Dr. Sinha's opinion, it is apparent from the decision that the ALJ did not accept the entire opinion, and specifically not the statement that Plaintiff required regular supervision due

to poor ability to self-regulate, because the findings of treating psychologist Dr. Reckman and treating psychiatrist Dr. Singh, whose progress notes from May 2014 through September 2015 indicated that with medication, Plaintiff reported decreased anger and aggression, as well as improved ability to control his anger. (Tr. 28, 715-16, 734, 766, 775-77, 780).

Upon review of the ALJ's decision, it could be determined that the ALJ did not accept Dr. Sinha's findings. However, such an explicit finding was never made by the ALJ and so the Court can only speculate the weight assigned to his findings. As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security,* 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services,* 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

The undersigned recognizes that it is the duty of the ALJ, and not the Court, to weigh the medical evidence. However, the ALJ's failure to fully and clearly articulate his

rationale for the weight given to the opinion evidence prevents this Court from engaging in meaningful review of the ALJ's decision in this regard. *See Hurst,* 753 F.2d at 517; Social Security Ruling (SSR) 82–62. Accordingly, the undersigned concludes that this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Fauche*r, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this Report and Recommendation; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOSEPH PACHECO,                                    Case No. 1:17-cv-445

    Plaintiff,                                      Dlott, J.
                                                            Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).